IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVEY LEE BRUCE                                                                         PLAINTIFF

v.                                   Civil No. 11-2057

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, David Bruce, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed his application for SSI on June 25, 2008, alleging disability due to back pain, anger management issues, bipolar disorder, attention deficit hyperactivity disorder "(ADHD"), and a learning disability since January 1, 1990. Tr. 96-98, 112-113, 124, 142, 144-145, 153. His applications were denied initially and on reconsideration. Tr. 46-49, 53-54.

An administrative hearing was held on November 9, 2009. Tr. 26-43. Plaintiff was present and represented by counsel. At this time, plaintiff was 20 years of age and possessed an tenth grade education. Tr. 20, 29, 33, 35, 128. Plaintiff was reportedly enrolled in special education classes from Kindergarten through tenth grade, resulting in limited reading and math skills. Tr. 33, 178. He had no past relevant work ("PRW") experience, but had worked as a truck washer. Tr. 21, 176.

On April 14, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's ADHD, mood/anger disorder, and borderline intellectual functioning ("BIF") did not meet or equal any Appendix 1 listing. Tr. 16-17. He found that plaintiff maintained the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels, but with the following nonexertional limitations: The claimant can do work in which interpersonal contact is incident to the work performed, the complexity of tasks is learned and performed by rote, with few variables and little judgment required. Supervision required is simple, direct, and concrete.

Tr. 17-18. With the assistance of a vocational expert, the ALJ then found that plaintiff could still perform work as a hand packager, auto detailer, and kitchen helper. Tr. 21.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on March 18, 2011. Tr. 1-6. Subsequently, plaintiff filed this action. Doc. # 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. Doc. # 10, 11.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir.

2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III. Discussion**:

Of particular concern to the undersigned is the ALJ's treatment of the evidence concerning Plaintiff's mental impairments. The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.* Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

In the present case, the evidence indicates that Plaintiff suffers from anger management/impulse control issues. On July 23, 2008, Plaintiff underwent a Mental Diagnostic Evaluation and Intellectual Assessment with Dr. Robert Spray, Jr. Tr. 175-181. Plaintiff indicated that he was applying for disability benefits due to his "distress." He indicated that his problems began when his father passed away in 1997 or 1998. Although he had never been formally diagnosed, Plaintiff stated that he suffered from bipolar disorder and couldn't "do hardly anything." He reported a limited education and significant anger management issues. Plaintiff

4

denied a history of mental health treatment, indicating that his mother wanted to take him to Harbor View about a month ago, but "never got around to it." Tr. 175-181.

Plaintiff was cooperative, anxious and fidgety, with a euthymic mood and an appropriate and variable affect. Tr. 175-181. He was inattentive to detail and impulsive in responding to some questions. Approximately four months prior, Plaintiff got into an altercation with his brother injuring him. He reported feeling elated while fighting with his brother. Plaintiff indicated that he often threatened others and/or slammed or threw things around. Tr. 175-181.

I. Q. testing revealed a full scale IQ of 74, indicative of BIF. Testing also confirmed that Plaintiff was suffering from ADHD. Dr. Spray diagnosed Plaintiff with bipolar II disorder, ADHD, and impulse control disorder and assessed Plaintiff with a global assessment of functioning score ("GAF") of 45-55. He concluded that Plaintiff's attention span was below average, he experienced difficulty in persisting with tasks related to his short fuse and being easily frustrated, he tended to be impulsive resulting in maladaptive behaviors and judgments, he was likely to be disorganized and to have difficulty staying on task, and he may be easily distracted by perceived interpersonal slights. Further, Dr. Spray determined Plaintiff would be unable to manage funds without assistance, due to his limited math and money management skills. Tr. 175-181.

On September 2, 2008, Plaintiff underwent a mental diagnostic evaluation with Dr. Patricia Walz. Tr. 191-195. In addition to a face-to-face evaluation, Dr. Walz also reviewed Plaintiff's medical records. Plaintiff stated that he had applied for disability due to anger problems and his inability to read and write well. This reportedly resulted in him not getting along well with co-workers and managers. He denied any history of psychiatric treatment or hospitalization, and reported taking no psychotropic medications. When asked why he had not pursued treatment, he

stated that it was because he never really thought he had a problem. Having two children now, Plaintiff had decided that he needed to get help.

Plaintiff reported performing a few different jobs, but indicated that he had been fired from or left each position due to his anger management issues. The longest he had ever held a job was four months, with his most recent work being that of a truck washer. Plaintiff currently resided with his mother and reported that he had never lived on his own. His wife and two children also resided with his mother. Dr. Walz noted that he was cooperative with a euthymic mood, consistent affect, clear and intelligible speech, and logical and goal directed thought processes. He reported problems with cognition and stated that he could not stay focused on anything for any amount of time. Dr. Walz concluded that Plaintiff's presentation was consistent with a diagnosis of BIF. She found no evidence of bipolar disorder, but did not note some hyperactivity. Dr. Walz diagnosed Plaintiff with probable ADHD, probable impulse control disorder, rule out alcohol abuse, and BIF. She then assessed him with a GAF of 50-55. She noted that he had adequate social skills; would have difficulty with complex tasks; had difficulty with a task of sustained attention; persisted well even when frustrated; and, processed information quickly, almost too fast to the point he made mistakes. Tr. 191-195.

On June 29, 2009, Plaintiff underwent a diagnostic interview with Stephen Chiovoloni, a licensed social worker with Western Arkansas Counseling and Guidance Center. Tr. 217-226. Plaintiff reported taking no current prescription or non-prescription medications, and indicated that he had not been treated for any medical or surgical condition within the last two years. He also denied inpatient psychiatric treatment and medications, but reported some outpatient treatment six months prior. Plaintiff admitted to suicidal thoughts and thoughts of harming others. Throughout his life, Plaintiff reported extreme difficulties controlling his anger. He stated that he became

"very vicious," destroying objects and becoming physically violent with others, including his wife. Plaintiff indicated that he was easily frustrated, and his frustration quickly escalated into anger and violence. As a result, Plaintiff had a history of arrest for assault and a recent charge for threatening his brother with a cinder block. Mr. Chiovoloni noted that Plaintiff was an extreme risk to others and a moderate risk to himself. He determined that Plaintiff suffered from issues involving anger management, bullying/intimidating others, communication problems, couples problems, impulse control, low self esteem, paranoia or suspicion, and deficits in social skills. Mr. Chiovoloni diagnosed Plaintiff with intermittent explosive disorder and depressive disorder not otherwise specified. He then assessed Plaintiff with a GAF of 55, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. Mr. Chiovoloni found Plaintiff to be in need of services to reduce the risk to him and others and to improve functioning and emotional control. Plaintiff stated that he preferred therapy only and did not want to use medications. Tr. 217-226.

Although the ALJ found Plaintiff ADHD and mood/anger disorder to be a severe impairments, these impairments do not seem to be accounted for in the ALJ's RFC assessment. Instead, the ALJ attempts to down play Plaintiff's issues by pointing out purported inconsistencies among the three psychological assessments. After a thorough review of the evidence, we find the evidence to be fairly consistent. Plaintiff had a history of physical altercations both as a teen and as an adult. He admitted to problems controlling his anger and frustration levels, causing him to quickly escalate into violent behavior. Plaintiff indicated that he had lost jobs in the past, due to these anger management issues. Tr. 34, 191-195. He also had a prior arrest for assault, and a more recent charge for threatening his brother with a cinder block. Tr. 217-226. Plaintiff's wife was even reportedly afraid Plaintiff might hurt their children. And, Mr. Chiovoloni concluded that

7

Plaintiff posed a severe risk to others. The ALJ, however, failed to property consider the fact that Plaintiff might pose a danger to others in a work environment. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record).

Further, all of the examiners agreed that Plaintiff's presentation was consistent with BIF, which Plaintiff reported was the source of a great deal of his anger and frustration as he felt others treated him differently due to his limited abilities. He also suffered from attention related limitations due to his ADHD. Dr. Spray noted that Plaintiff experienced difficulty in persisting with tasks related to his short fuse and being easily frustrated, he tended to be impulsive resulting in maladaptive behaviors and judgments, he was likely to be disorganized and to have difficulty staying on task, and he may be easily distracted by perceived interpersonal slights. Dr. Walz agreed that Plaintiff would have difficulty with a task of sustained attention, and noted that he often processed information too quickly, resulting in numerous mistakes. While the ALJ attempts to use Plaintiff's quick processing skills to evidence his work-related abilities, we do not find quick, inefficient processing skills to be a highly sought after quality in an employee. Accordingly, we believe the ALJ should reconsider the limitations imposed by Plaintiff's ADHD and anger/impulse control impairment.

The examiners also agreed that Plaintiff had a GAF score between 45 and 55. Contrary to the ALJ's opinion, a GAF of 41-50 is indicative of serious symptoms, while a GAF of 51 to 59 evidences moderate symptoms. *See* Diagnostic and Statistical Manual of Mental Disorders IV-TR 34 (4th ed. 2000). Thus, it seems clear to the undersigned that Plaintiff's symptoms were moderate to severe, and would impact his ability to maintain attention and concentration, get along with coworkers or peers, maintain socially appropriate behavior, accept

criticism from supervisors, and respond appropriately to changes in work setting. And, we note that the only mental RFC assessment of record was completed by a non-examining, consultative psychologist. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Accordingly, we believe that remand is necessary to allow the ALJ to reconsider the combined limitations imposed by Plaintiff's mental impairments and to obtain an RFC assessment from a treating mental health professional, preferably a professional from Western Arkansas Counseling and Guidance Center. 20 C.F.R. § 404.1523(ALJ must consider all impairments in combination).

The ALJ also contends that the Plaintiff's testimony concerning his reading limitations is not credible because Plaintiff completed, signed, and dated the disability paperwork. The ALJ argues this is evidence that he was able to read the paperwork and complete it without assistance. We do not agree. It is possible that Plaintiff's mother read the documents to him and completed them for him, as he testified she did in all other cases, and that he merely signed the paperwork. However, we can not say for certain one way or the other, as Plaintiff was not questioned about this at the hearing. In fact, the majority of the information gleaned from the short administrative hearing is of limited assistance to the undersigned. The hearing lasted a mere 19 minutes, and was fully transcribed in approximately 14 pages. The ALJ asked limited questions and counsel's questions failed to really shed light on Plaintiff's mental capacity to work. "Superficial questioning of inarticulate claimants or claimants with limited education is likely to elicit responses which fail to portray accurately the extent of their limitations." *Lashley v. Sec. of Health & Human Servs.,* 708 F.2d 1048, 1052 (6th Cir. 1983). And, although the length of a hearing is not dispositive, it is a consideration. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994); *Thompson v.*

*Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993). Accordingly, we believe remand is necessary to allow the ALJ to develop the record further concerning Plaintiff's reading abilities, anger management/impulse control issues, and the relationship between those impairments and his ability to perform work-related tasks.

### IV.  Conclusion:

Based on the foregoing, we reverse the decision of the ALJ and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 30th day of March 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE